**COMMONWEALTH OF PUERTO RICO,**
**Plaintiff,**

**v.**

**SEA–LAND SERVICE, INC., et al.,**
**Defendants.**

**Civ. No. 728–69.**

United States District Court,
D. Puerto Rico.

March 31, 1970.

Ruth T. De Lebron-Velazquez, Dept. of Justice, San Juan, P. R., for the Commonwealth of P. R.

Jimenez & Fuste, José A. Fusté, San Juan, P. R., for defendants.

## MEMORANDUM ORDER

CANCIO, Chief Judge.

This is a civil action instituted by the Commonwealth of Puerto Rico against the defendants herein seeking relief for an alleged misdelivery of 63 trailer loads of food shipped by the United States government and consigned to the Department of Social Services of the Commonwealth of Puerto Rico, carried by sea on codefendant's, Sea-Land Service, Inc., vessels under a bill of lading contract from a port in the continental United States to San Juan, Puerto Rico. The complaint originally filed in the Superior Court of Puerto Rico, San Juan Part, alleges, among other things, that codefendant Sea Land Service, Inc. placed the contents of the 63 vans in storage in violation of Section 16, as amended, of the Dock and Harbor Law of the Commonwealth of Puerto Rico, 23 LPRA 396, the alleged violation consisting in that the carrier stored the merchandise be-

fore the five-day time limit for storage allegedly provided by law.[1]

In due time, and pursuant to 28 U.S.C.A. § 1441, et seq. codefendant Sea-Land filed a Petition for Removal before this Court alleging that the above-described is a civil action over which this Court has jurisdiction pursuant to 28 U.S.C.A. § 1337 in that plaintiff's cause of action is one for misdelivery to a warehousing company of certain shipments delivered to the carrier and transported under bill of lading contracts from ports in continental United States to San Juan, Puerto Rico in several of Sea-Land's vessels, and further alleging that the bill of lading contract, as well as plaintiff's cause of action, was governed by the terms and conditions of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300, et seq., the Harter Act, 46 U.S.C.A. § 190, et seq., the United States Shipping Act, 46 U.S.C.A. § 801, et seq., the rules and regulations of the Federal Maritime Commission and Sea-Land's Tariff filed with the Federal Maritime Commission pursuant to the above-mentioned Shipping Act of the United States. Finally, Sea-Land alleged that the above-mentioned are all Acts of Congress or rules and regulations enacted to regulate commerce and that in order to determine whether Sea-Land Service, Inc. is or is not liable to plaintiff in said civil action, this Court must construe the terms and conditions of the bill of lading contract as well as the different acts enacted by Congress to regulate commerce, all within the meaning of 28 U.S.C.A. § 1337.

The codefendant Waldo G. Vázquez, doing business as Almacenes Asociados, joined Sea-Land's Petition for Removal.

On October 30, 1969, the Commonwealth of Puerto Rico filed a motion requesting that this case be remanded to the Superior Court of Puerto Rico, San Juan Part. A reading of the motion to remand, as well as of the briefs filed in support thereto, shows that plaintiff's motion is based on the following grounds:

1. That this case is one arising exclusively under Section 16 of the Dock and Harbor Law of the Commonwealth of Puerto Rico, 23 LPRA 396, and that there is no issue of federal law in the present controversy.

2. That the allegations averred by the codefendant Sea-Land Service, Inc. in support of its Petition for Removal are frivolous and without merit and constitute mere conclusions of law.

3. That even should this Court hold that it has concurrent jurisdiction with the court of the Commonwealth of Puerto Rico, the proper forum to litigate this controversy is the court of origin.

4. That the removal statutes of the United States grant this Court derivative jurisdiction and that if this Court should find that there is an exclusive federal question involved, it would be compelled to dismiss the case at bar, as by implication this Court would be ruling that the Superior Court of Puerto Rico did not have jurisdiction over the subject matter.

5. That the Commonwealth of Puerto Rico is a sovereign and thus immune from suit in the federal court.

6. That this Court is without jurisdiction to entertain the Petition for Removal due to the fact that the complaint and other documents pertaining to Civil Case No. 69–5689, as filed by the plaintiff in the Superior Court of Puerto Rico have not been certified as true and correct by the court's interpreter, all in compliance with the rules of this court.

1. Section 16, 23 L.P.R.A. 396 provides that:

"The owners, lessees or manager of any pier, wharf, or bulkhead, shall not be permitted to use them for the permanent storage of goods, merchandise, cargo or material of any kind which may be discharged or placed for loading," and that "every structure of this character is designed for the protection of merchandise or to expedite its loading and unloading in transit, and all cargo deposited thereon shall be removed within the five (5) working days following the date on which same was discharged or placed for loading."

## I

In a motion to remand, the plaintiff contends that this case was not properly removed and that it should be remanded to the Superior Court of Puerto Rico on the ground that the action, as pleaded by plaintiff, did not arise under the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300, et seq., the Harter Act, 46 U.S.C.A. § 190, et seq., the Shipping Act of the United States, 46 U.S.C.A. § 801, et seq., nor under the provisions of Sea-Land's Tariff filed with the Federal Maritime Commission. In support of the above-mentioned contention, the plaintiff invoked during oral argument the general rule that for removal purposes the character of plaintiff's action is determined by the allegations set forth in the complaint. Said party placed considerable emphasis upon the fact that the complaint did not mention or refer to the various acts of Congress enacted to regulate commerce which the defendants allege are controlling in the case now before this Court. In the first place, we will dispose of the argument that the various acts of Congress enacted to regulate commerce are of no application to the case at bar. Later we will state the reasons why the Court is of the opinion that no reference to said acts of Congress in the complaint was necessary to warrant the removal of this case.

■ Plaintiff's allegations make its suit one arising under the Carriage of Goods by Sea Act, the Harter Act, the United States Shipping Act or Sea-Land's Tariff, or any combination of these. Plaintiff's allegations set forth in a very superficial way that Sea-Land transported, obviously by water, certain trailer loads of food consigned to the Department of Social Services of the Commonwealth of Puerto Rico and that said shipments were misdelivered to a warehousing company. These allegations, without more, immediately bring into full force and effect the federal statutes, rules and regulations, as well as the tariff provisions regulating commerce above mentioned.

An examination of each of the statutes enacted by Congress to regulate commerce, which the Court understands are controlling here, shows that there is no way for the plaintiff to avoid its absolute applicability. A close analysis of Sections 1300, 1309 and 1312 of the Carriage of Goods by Sea Act, 46 U.S.C.A. §§ 1300, 1309 and 1312, confirms our understanding. Section 1300 of the Act reads as follows:

Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter.

Section 1312 of the Act reads as follows:

This chapter shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade. As used in this chapter the term "United States" includes its districts, territories, and possessions. The term "foreign trade" means the transportation of goods between the ports of the United States and ports of foreign countries. *Nothing in this chapter shall be held to apply to contracts for carriage of goods by sea between any port of the United States or its possessions, and any other port of the United States or its possessions: Provided, however, That any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter. . . . .* (Emphasis added)

■ Even a superficial interpretation of Sections 1300 and 1312 will show that the Carriage of Goods by Sea Act is applicable to interstate or coastwise commerce if the carrier so desires. All it has to do is incorporate the name in the contract of carriage. Once this is

done, the contract of carriage is subject to said Act, as fully as in foreign commerce. Sea-Land Service, Inc., as practically all the carriers do in today's shipping reality, made use of the option made available in Section 1312 of the Act. (See Exhibit A to defendant's memorandum, dated November 22, 1969). Said incorporation is a valid one. Van Camp Food Company v. Pacific Atlantic SS Co., 122 F.Supp. 163 (D.C. Pa.1954); Burdines v. Pan Atlantic SS Corporation, 199 F.2d 571 (CA Fla. 1952); Waterman SS Corporation v. United States Smelting Refining and Mining Company, 155 F.2d 687 (CA La. 1946), cert. denied 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656.

Is delivery covered by the Carriage of Goods by Sea Act? The answers to this question must be in the affirmative. Sea-Land also made use of the option granted by Section 1307 in relation to Section 1311 of the Act and incorporated said Act of Congress to cover the responsibility of the carrier up to and including delivery. To this effect Sea-Land's short form bill of lading, which by the way is a valid form, Zifferer v. Atlantic Line Ltd., 278 F.Supp. 736 (DC P.R.1968) provides that during the period of receipt of the goods at the inland point until the time the goods are delivered into the custody of Sea-Land Service, Inc. at the point of loading and during all other periods including the time the goods are in the custody of Sea-Land and during the time the goods are loaded on board, carried and discharged from any vessel, and during the time the goods are in the custody of Sea-Land at the port of discharge, as well as in the custody of Sea-Land, its agents or independent contractors before loading, after the discharge and until delivery, the carriage will be subject to the terms and conditions of Sea-Land's regular long form bill of lading contract, which in its clause #1 states that the same is subject to the provisions of the Carriage of Goods by Sea Act of the United States which are incorporated therein, with the effect that the carrier shall be entitled to avail itself of all the rights, limitations, exceptions and immunities provided for in said Carriage of Goods by Sea Act, although the contract of carriage, evidenced by the bill of lading, may be for the carriage of goods between ports of the United States.

In any event, the Harter Act, 46 U.S. C.A. § 190 et seq., which is the statute controlling the transportation between the mainland and Puerto Rico, *ex proprio vigore* is also applicable since it is the corresponding Act of Congress regulating domestic or interstate shipments by water. Waterman SS Company v. United States Smelting Refining and Mining Company, *supra*. The Vale Royal, et al., 51 F.Supp. 412 (DC Md.1943); Empacadora Puertorriqueña De Carnes v. Alterman Transport Line, et al., 303 F. Supp. 474 (DC P.R.1969).

As previously stated in this memorandum order, plaintiff's complaint lacks language making reference to the maritime flavor of this cause of action arising under various acts of Congress regulating commerce. Notwithstanding that fact, it shows enough facts to make applicable the Carriage of Goods by Sea Act, as well as the Harter Act:

1. Goods were received for ocean shipment at a port of the United States.

2. Goods were received by Sea-Land for carriage to San Juan, a port of the United States.

3. The delivery for shipment was obviously a contract for carriage by sea and thus a maritime contract.

4. Bills of lading were issued therefor (htis fact must be inferred).

5. The carrier made use of the legal alternatives offered in Sections 1312, 1307 in relation to 1311 and, obviously, Section 1300 of the Carriage of Goods by Sea Act.

The carrier's obligations were, therefore, fixed at least in part by said Acts of Congress.

The United States Shipping Act, 46 U.S.C.A. § 801, is also applicable to the case at bar. The United States Ship-

ping Act governs the relationship of maritime carriers and the public from the standpoint of registration, enrollment and licensing of vessels, as well as from the standpoint of the sufficiency of bill of lading contracts, charges, rates, fares, classifications and tariffs dealing with the manner and method of transportation and delivery of cargo. Section 801 of the Act defines what it considers a common carrier by water and what waters are covered. According to said Section, Puerto Rican waters are covered by the dispositions of the Act. This piece of legislation controls the registration, enrollment and licensing of vessels, its purchases, its charters, both in foreign and domestic commerce, and the rates, regulations, charges, tariffs and contracts relative to shipping, all in the protection of the consumer of the shipping services. The Federal Maritime Commission is the regulatory or administrative body created under the Act to manage its legislative intent. Said Commission, pursuant to 46 U.S.C.A. §§ 817 and 844, requires every common carrier by water in interstate commerce to establish, observe and enforce just and reasonable rates, fares, charges, classifications and tariffs and just and reasonable regulations and practices relating to the issuance of bills of lading, the carrying of the cargo and the publicity to be given by the carrier to all of these complicated dispositions, all in the protection of the consumer of the service offered by the carriers. An examination of the complicated rules and regulations of the Federal Maritime Commission is most interesting, especially in relation to the case now before the consideration of this Court. The regulations affecting maritime carriers, such as Sea-Land, and other related activities appear in 46 CFR 510, et seq. Part 531 of said Regulations, 46 CFR 531, et seq., governs everything relating to the publication, posting and filing of freight rates, tariffs and charges. The tariff properly speaking, as defined by the regulations in Section 531.0(j), is the publication that contains the actual rates, fares, charges, classifications, rules, regulations and practices of a common carrier by water. It is precisely under these regulations, approved under the provisions of the Shipping Act, that Sea-Land's tariff was confectioned, filed, and approved by the Commission. Part of this tariff is of direct application to the case at bar, and it is because of the fact that the Shipping Act of 1916 as amended, enters into play and has a vital role in determining the legality of the tariff. Those parts of the tariff which are applicable to the case at bar are items 130 and 570, respectively, of Tariff 7(b), Federal Maritime Commission reference No. 16, marked as Exhibits A and B to defendant's memorandum dated December 9, (filed December 16) 1969. Item 130, in conjunction with the Carriage of Goods by Sea Act, regulates the arrival, notice and the problems of undelivered freight. Said piece of the tariff provides that the notice of arrival will be mailed to one party at one address as designated by the shipper on the bill of lading and not later than the day when free time begins. Item 570 regulates the removal of the carrier's trailer by the shipper or the consignee for loading and unloading. Said item is applicable only in Puerto Rico. [Free time and demurrage charges shall apply to Sea-Land's equipment in Puerto Rico, either moving in pick up or delivery service at the rates and charges named in the tariff.] The tariff expressly concedes free time to pick up the merchandise which will commence, on in-bound loads, the first 8 a. m. following the complete discharge of the vessel. Free time as such is regulated taking into consideration the type of commodity or equipment used and the number of trailers for one shipper or consignee aboard each vessel on a certain voyage. Upon expiration of the free time provided, a demurrage charge is assessed to the consignee and whenever the freight remains undelivered, through no fault of the carrier after the expiration of the free time, the carrier may place the freight in a public storage warehouse at the expense

and for the account of the consignee or owner. In brief, Items 130 and 570 of Sea-Land's tariff provides for the following:

1. An arrival notice and the way to give the same.

2. Provisions for the case in which consignee refuses the merchandise or cannot be located.

3. The establishment of a free-time period for the consignee to pick up his cargo.

4. The method of computing the free time.

5. The free time allowed for the consignee to receive its goods.

6. The treatment to be afforded to unloading and reloading at one place.

7. The demurrage charges to be assessed per trailer for its use beyond the free-time period allowed.

8. Warehousing for unclaimed merchandise.

As in the case of the other statutes discussed, the Shipping Act of 1916, 46 U.S.C.A. § 801, et seq., the Federal Maritime Commission's Rules and Regulations and Sea-Land's Tariff filed with said administrative body are applicable in Puerto Rico by express mandate of Congress. The Court knows of no case in which it has been decided that the Shipping Act or the Rules and Regulations of the Federal Maritime Commission approved under said Act are inapplicable to Puerto Rico. On the contrary, there are cases, like Bernhard Ulmann Company, Inc. v. Porto Rican Express Co. Federal Maritime Commission Case No. 701, 1952, reported at 1952 AMC 447, in which it was expressly stated that respondent was a carrier by water subject to the Shipping Act of the United States because of its operations between New York and Puerto Rico, and was directed to file with the Federal Maritime Commission, its rates, charges, classifications, rules and regulations in accordance with that part of the Shipping Act known as the Intercoastal Act, 46 U.S.C.A. § 844. The Court is also aware of cases in which the Commonwealth of Puerto Rico has litigated against orders of the Federal Maritime Commission and has obtained remedies in its favor in respect to the reduction or alteration of freights affecting Puerto Rico. The Commonwealth of Puerto Rico v. Federal Maritime Board, et al., 110 U.S.App.D.C. 17, 288 F.2d 419 (1961). In the above cited case the Commonwealth of Puerto Rico tacitly recognizes the Federal Maritime Commission's authority over Puerto Rico as given by the Shipping Act. An examination of the Shipping Act, of the Federal Maritime Commission's Rules and Regulations and of the carrier's tariff filed under them, shows that the same are applicable to Puerto Rico and that they have not been superseded by local legislation. No one will seriously argue that said Act of Congress is of no application in our territorial waters.

Since the purpose of the Shipping Act, 46 U.S.C.A. § 801, et seq., is to regulate and promote the commerce of the United States, a suit arising under it is one arising under a law regulating commerce within the meaning of 28 U.S.C.A. § 1337. Ingram Day Lumber Co. v. United States Shipping Board Emergency Fleet Corporation, 267 F. 283 (DC Miss.1920); Penn Motor Truck Association v. Port of Philadelphia Marine Terminal Association, 183 F.Supp. 910 (DC Pa.1960).

In sum, defendant's removal theory is to the effect that the only remedy afforded by the law to the plaintiff in the case at bar springs from the contract of carriage relationship to which the plaintiff was a consignee and a party in interest. All the rights and liabilities of the parties are to be determined by the application and construction to be given by this Court to the Carriage of Goods by Sea Act, to the Harter Act, to the United States Shipping Act, to the Federal Maritime Commission's Rules and Regulations approved under said Shipping Act, and to Sea-Land's tariff relating to delivery and warehousing filed with and approved by the Federal Mari-

time Commission, all being acts of Congress or rules and regulations, concerning commerce within the meaning of 28 U.S.C.A. § 1337, irrespective of plaintiff's express pleading to the contrary.

■ As to the reasons why no express mention of the various acts of Congress so far discussed was necessary in plaintiff's pleading in order to warrant the removal of this cause, suffice it to say that it is clear that a United States District Court should take judicial notice of any federal laws which are controlling in the complaint. The cases so holding are numerous, but the following quotation from page 768 of S. E. Overton Company v. International Brotherhood, etc., 115 F.Supp. 764 (D.C.Mich.1953), amply substantiates this principle:

■ The complaint does not expressly mention the Labor Management Relations Act of 1947, commonly known as the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq., nor does it mention the Federal statutes relating to interstate commerce. However, it is fundamental that the court may properly take judicial notice of any Federal laws necessarily brought into play by the allegations of the complaint, although specific reference to such laws has been omitted. In Dynamic Mfrs., Inc. v. Local 614 of the Gen. Drivers, Warehousemen & Helpers of America, D.C., 103 F.Supp. 651, at page 652, the district court for the Eastern District of Michigan said:

"The fact that the plaintiff in his bill does not identify a Federal statute, does not prevent the court from recognizing the existence of a controversy clearly covered by a Federal statute. The Court will take 'judicial notice of any Federal laws necessarily brought into play by the allegations of the complaint; and it is immaterial that specific reference to such laws may be omitted in the pleading.'"

See also Southern Pacific Co. v. Stewart, 245 U.S. 359, 362, 38 S.Ct. 130, 62 L.Ed. 345; Downey v. Geary-Wright Tobacco Co., D.C., 39 F.Supp. 33; Pocahontas Terminal Corporation v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217.

[3] It is clear that the complaint alleges a controversy which affects interstate commerce.

■ As decided in Crispin Company v. Lykes Bros. Steamship Company, 134 F.Supp. 704 (SD Tex.1955), the mere fact that transportation by water is averred in the complaint, brings into play the statutes above referred to, and a specific reference to them is unnecessary and immaterial. *The Crispin* case was one in which an action was filed to recover for damages to cargo transported under a bill of lading contract governed by the Carriage of Goods by Sea Act. The action was filed in the State court and removed by the defendant. As in our case, the removal theory was that the action was one arising under an Act of Congress regulating commerce, namely, the Carriage of Goods by Sea Act, and as such was one of which the district courts of the United States had original jurisdiction under 28 U.S.C.A. § 1337 and removal jurisdiction pursuant to 28 U.S.C.A. § 1441. The Court concluded that the action was one in which the court had removal jurisdiction. In relation to the necessity of pleading the statute expressly, the Court stated at page 706:

. . . The petition contains no mention of, or reference to, the Carriage of Goods by Sea Act. In separate paragraphs, allegations are made of breach of contract (Paragraph II) and of negligent handling of the cargo (Paragraph IV). But the only duty which the defendant owes plaintiff springs from the shipper-carrier relation; and despite the careful omission of any reference to the statute, and whether the complaint sound in tort or in contract, the obligations, responsibilities, and liabilities which result from the shipper-carrier relation, are circumscribed by terms of the statute. *When facts are alleged which bring the statute into play, a specific*

reference to it is unnecessary and immaterial. Great Northern Ry. v. Galbreath Co., 271 U.S. 99, 46 S.Ct. 439, 70 L.Ed. 854; McGoon v. Northern Pac. Ry., D.C., 204 F. 998, and cases there cited . . .

■ Finally, we will discuss the nature and extent of Section 16 of the Dock and Harbor Law of the Commonwealth of Puerto Rico, 23 L.P.R.A. 396, as compared with the above-mentioned Acts of Congress regulating commerce. In the text of Section 396 the legislative intent is expressly brought forward in the initial paragraph. The legislative intent is directed not to permit the owner, lessee or manager or any pier, wharf or bulk head to use the facility for permanent storage of cargo or material of any kind because the purpose of the transit areas or sheds is to protect the merchandise or to expedite its loading and unloading in transit. To this effect, this section states that between the carrier and the Ports Authority there will be a maximum term of five days in which to clear up these areas. If this is not done, a penalty and a fine will lie, thus making Section 396 a statute of criminal nature. Section 396 regulates the relationship between the pier operator and the Ports Authority's property. There is no provision in this section concerning the relation between consignees or shippers. No arrival notice dispositions are present, no demurrage charges and free time to pick up and deliver trailers are established and no rights relative to the contract of carriage as such are regulated. It can not be sustained, as claimed by plaintiff, that its cause of action is based solely on Section 396 of the Dock and Harbor Law, exclusive of the Federal statutes mentioned by the defendant. Section 396 regulates the relationship of the pier operator and the transit area or shed of the pier belonging to the Government and has nothing to do with the contracts of carriage by water or regulatory schemes like the one present in the Shipping Act, the Federal Maritime Commission's Rules and Regulations and Sea-Land's Tariff.

A close examination of the voluminous material behind said Acts of Congress will show that Section 396 contemplates a completely different relation in protection of the Government's private property and affords no remedy for alleged misdelivery of cargo to a warehousing company. In other words, Section 396 has as its underlying purpose the orderly disposition of merchandise or materials away from the transit area or pier aprons in order to expedite the continuous flow of incoming and outgoing cargo. By no means has it the purpose of regulating the rights, liberties, conditions and exceptions to the contract of carriage between the parties and the right of the carrier to deliver goods to the consignee or to a warehouse on his account. This is of the jurisdiction of the various acts of Congress regulating commerce discussed and relied upon by the defendant in order to sustain its Petition for Removal.

## II

■ In an effort to avoid the removal of this cause, the plaintiff cites various cases in support of its contention that the complaint herein does not present a claim or right arising under the constitution, treaties or laws of the United States. Plaintiff's contention seems to be based on the fact that defendant's basis for removal is the "federal question" statute 28 U.S.C.A. § 1331. The cases cited by plaintiff so confirm. These cases hold that plaintiff is the master of his cause of action; that in order for a federal question to be present as to grant removal it has to be well pleaded and that a case is not removable where the complaint states a non-federal claim. This would be applicable if the only basis for removal in defendant's Petition were the federal question statute, 28 U.S.C.A. § 1331, but the plaintiff seems to overlook the fact that defendant's main removal argument is that this is a civil case in which certain laws involving commerce have to be interpreted because the whole cause of action arises out of them. Section 1337,

and not 28 U.S.C.A. § 1331, is the main removal basis in this case. Each section excludes the other and any attempt to inject the requisites of 1331 into 1337 would go against Congress' desire to create two different grounds for federal jurisdiction. If Congress intended Section 1337 to follow the pattern of Section 1331, all it had to do was to amend 1331 so as to exclude the amount in controversy in cases in which laws affecting commerce were involved. Since this was not done, it follows that both sections exclude each other. Sections 1331 and 1337 are independent grounds of federal jurisdiction. As to 28 U.S.C.A. § 1337 we refer to the case of The Crispin Co. v. Lykes Steamship Co., *supra,* in which it is decided that no reference to the federal statute in the complaint is needed and that the court should hold the case removable if laws affecting commerce are involved, irrespective of whether the complaint sounds in tort or in contract. This case gives Section 1337 the true meaning Congress intended for it. See also American Amusement Company v. Ludwig, 82 F.Supp. 265 (DC Minn.1947) which decides, in essence, that 28 U.S.C.A. §§ 1331 and 1337 are mutually exclusive and that Congress intended no repetition or concurrency in establishing said jurisdictional statutes.

Plaintiff's theory, announced during oral argument, has the effect of depriving this Court of jurisdiction, since the motion to remand is partly on the basis that the claim was not based on a law of the United States regulating commerce. The plaintiff argues that even though the cause of action must ultimately be tested and decided solely on the provisions of a federal statute, it cannot be heard by this Court on the law side because of a lack of proper identification. If the plaintiff's contention in this respect is allowed to stand, the Court will be compelled to dismiss on its own motion all removed actions now pending before it involving cargo damage, misdelivery and deviation to shipments carried by water, unless diversity of citizenship and amount in controversy are present. It will, in short, have to close its doors to a traditional class of claims even though this Court is technically open to a $50.00 suit for damages to an interstate rail shipment. The parties, too, will then be committed by a remand or dismissal solely to the trial of such litigation in the state courts, which must then adjudicate on the basis of the federal statutes. I cannot believe that it was intended that the end result be that the very judicial system whose decisions must furnish the exclusive guide is powerless to adjudicate directly. Every provision in the local statute discussed must finally be judged in the light of compliance with the federal statutes invoked by the defendant, and under no circumstances can a single provision, no matter how favorable or harsh, be applied to determine the rights of the parties unless it is in strict compliance with the federal statutes invoked. It is plain that every suit arising out of the contract for carriage is, in the words of the Supreme Court in Peyton v. Railway Express Agency, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942), a present controversy dependent for its outcome upon the construction of federal statutes. Consequently, the moment a suit for misdelivery of a shipment by water is filed, it involves directly the Carriage of Goods by Sea Act or the Harter Act, the United States Shipping Act and the tariffs approved by the Federal Maritime Commission for the carrier pursuant to said Shipping Act. By the terms of the law itself, and by the force of the principles imposed, every phase of the case is finally judged in the light of those statutes. It is not sound argument to believe that Congress contemplated that its sweeping mandate could be made ineffectual by the omission of the statutes by name in the plaintiff's pleading. Surely, the jurisdiction of this court does not rest upon such specious ground. Surely, this Court must see that whatever the plaintiff says or does not say, the moment the facts alleged show a shipment by water, the action involves and arises under the

Carriage of Goods by Sea Act or the Harter Act, the United States Shipping Act and the carrier's tariff.

### III

The plaintiff alleges that this court has concurrent jurisdiction with the courts of the Commonwealth of Puerto Rico and that the proper forum to litigate this controversy is the court of origin. Plaintiff bases its allegations on the saving to suitors clause, 28 U.S.C.A. § 1333. It interprets said clause to the effect that once the plaintiff elects to make use of the clause and files its maritime claim in the local court, the same cannot be removed to the federal court even if there is some additional basis of removal jurisdiction present. We do not agree with plaintiff's interpretation of the saving to suitors clause. The Court understands the rule to be that the judicial power of the United States shall extend to all cases of admiralty and maritime jurisdiction, saving to suitors all remedies afforded by the common law, and that once the plaintiff elects the state forum the case can be removed only if there exists an independent ground of federal jurisdiction, whether diversity, 28 U.S.C.A. § 1332, or otherwise, as in the case of 28 U.S.C.A. § 1337. As stated in 28 U.S.C.A. § 1441 (b), any civil action over which the district courts have original jurisdiction founded on a claim or right arising out of the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship of the parties. While a maritime action as such is not an action arising out of the laws of the United States within the language of Section 1441(b), as decided in Romero v. International Terminal Operating Co., 358 U.S. 354, at page 368, 79 S.Ct. 468 at page 478, 3 L.Ed.2d 368, if a case is removable under Section 1441 (b) or under 1441(a) (like the case at bar that is removable under 28 U.S.C.A. § 1337), the removal is independent of 28 U.S.C.A. § 1333 and, therefore, the saving to suitors clause will not preclude removal to the civil side of the federal court.

Where a Savings Clause action is properly brought as a civil action, as happens in the case at bar in a state court, removal can, when warranted by Section 1441, be accomplished to the civil side of the federal district courts. 1A Moore on Fed.Practice, Sec. 0.167 (3–2). This is precisely how Crispin v. Lykes, 134 F.Supp. 704 (SD Tex. 1955) case cited herein, was removed. An independent ground for jurisdiction existed pursuant to 28 U.S.C.A. § 1337.

If the plaintiff filed its complaint under the saving to suitors clause, he is, in effect, saying that its cause of action is purely maritime. On the other hand, the plaintiff, from the moment it filed its motion to remand, has denied any maritime flavor in its cause of action by asserting that this is a civil action arising out of local law, especially under Section 396 of the Dock and Harbor Law, 23 L.P.R.A. 396. The truth is that the action at bar is a civil action, removable as such under 28 U.S.C.A. § 1337 in relation to 28 U.S.C.A. § 1441 (a), irrespective of whether the plaintiff filed the same in the Superior Court of Puerto Rico under the saving to suitors clause, 28 U.S.C.A. § 1333.

### IV

The plaintiff alleges that the general removal statute is derivative and if this Court should find that there is an exclusive federal question involved in the complaint, the next thing to do would be to dismiss the whole case as, by implication, the Court would be saying that the Superior Court of Puerto Rico did not have jurisdiction over the subject matter. Plaintiff's argument is without merit.

The defendant concedes that the removal jurisdiction of this court is in a limited sense a derivative jurisdiction and that when a cause is removed from a state court into a federal the latter takes it as it stood in the former. An example of this principle can be seen

in the case at bar. The complaint filed by the plaintiff in the local court and the provisional remedies there obtained under Rule 56 of the local rules of civil procedure are binding upon the federal courts and are as valid as if filed originally in this court or entered by one of the judges of the same. But it is illogical to say that if this Court finds an exclusive federal question the case has to be dismissed.

In the first place, there is seldom such a thing as an exclusive federal question. It is a basic principle of constitutional law that both the United States courts and the state courts are the guardians of the United States Constitution and laws of the United States. It is true that in some cases, like admiralty proceedings *in rem* and Miller Act cases, the federal jurisdiction is exclusive, but apart from those limited cases, both the federal and state jurisdictions can undertake the mission of resolving a federally created right or cause of action.

■ As we have seen, this is a civil action for misdelivery of cargo transported under a contract of carriage covered by federal law all the way. This case could be tried in either the federal or the local forum because the federal exclusiveness doctrine is of no application to this type of case. The plaintiff elected to file it in the local court and that was perfectly lawful, but the defendant was entitled to remove it to the federal forum pursuant to 28 U.S.C.A. § 1337 in relation to 28 U.S.C.A. § 1441, because the action is inevitably a civil action predicated upon laws of Congress regulating commerce. What was done by the parties was all perfectly legal and there is no need to talk in terms of dismissal. This is not one of those limited number of cases in which the federal jurisdiction is exclusive. The defendant simply made use of the rights afforded to it by the removal statute of the United States. An order of this Court granting defendant's Petition for Removal will be simply an order recognizing the existence of a ground for removal. It will never be construed as denying the local court's jurisdiction. It will simply open the doors of the federal forum to a case to which the removal statutes understand should be opened. It is like a continuation of the case in the federal forum which is undoubtedly the guardian of the Constitution and laws of the United States. This kind of removal happens every day in this and all other federal district courts.

V

■ It is settled law that the Commonwealth of Puerto Rico, as a sovereign, has not consented to be sued for damages in the federal courts. Salkin v. Commonwealth of Puerto Rico, 408 F. 2d 682 (1st Cir. 1969). But this basic principle is of no application to a case in which the Commonwealth sues the citizen for the violation of a contract of carriage by water and for eventual damages. One thing is the Commonwealth as a defendant in which case it has the right to plead its sovereign immunity, and another thing is the Commonwealth as plaintiff, voluntarily filing a complaint against a citizen.

■ It is an established principle of jurisprudence, resting upon grounds of public policy, that the sovereign cannot be sued in its own courts or in any other court without its consent and permission. It is inherent in the nature of a sovereign not to be amenable to the suit of a citizen without its consent, this principle being of application to the states of the Union and the Commonwealth of Puerto Rico. Porto Rico v. Rosaly, 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507 (1913). But the general premise of immunity has exceptions and of course sovereignty can be waived.

■ The waiver of the right to plead sovereign immunity can be done by the sovereign in various ways. It can be done by express provision of law, as in the case of Law 104 of June 29, 1955, 32 L.P.R.A. 3077, or by ways other than a formal declaration of consent in a statute. One of the instances in which a sovereign, like the Commonwealth of

Puerto Rico, can waive its sovereign immunity is by having a sufficient interest in the outcome of certain litigation as to become a plaintiff in it. This is precisely the situation in the case at bar. The Commonwealth of Puerto Rico voluntarily chose to file a suit against Sea-Land and a warehousing company requesting from the Court a ruling on whether Sea-Land misdelivered the cargo or not and praying that Sea-Land be ordered to pay the warehousing fees. But when the defendants assert their rights under the laws of the United States, the Commonwealth claims its sovereign immunity and states that it never consented to be sued for damages. That we fail to understand, mainly on two grounds:

1. The defendants are not suing the Commonwealth, it is the Commonwealth who is suing the defendants. Under these circumstances, the ruling of Salkin v. Commonwealth, 408 F.2d 682 (1st Cir. 1969) is of no application. *Salkin's* ruling is limited to the fact that a citizen is not allowed to sue the Commonwealth for damages in the federal court. Said case is distinguishable from the one at bar because the defendants are not suing the Commonwealth. They are merely defending themselves from the Commonwealth's complaint and Sea-Land is only requesting from the Court a ruling to the effect that it did not misdeliver the cargo, and that because of that fact the warehousing fees are to be paid by the Commonwealth.[2]

2. Once the Commonwealth decides to voluntarily become a party to a suit involving its interests by way of the attorney general, as in the case at bar, it waives its sovereign immunity, which consent and waiver cannot afterwards be withdrawn. Porto Rico v. Ramos, 232 U.S. 627, 34 S.Ct. 461, 58 L.Ed. 768 (1914). Once the veil of sovereign immunity is voluntarily lifted by the Commonwealth itself, it stands in the shoes of an ordinary citizen and the cause of action can be removed to the federal court if there are grounds for removal. This concept of waiver of immunity is the silent legal premise behind case like People of Porto Rico v. Fortuna Estates, 279 F. 500 (1st Cir. 1922), cert. denied 259 U.S. 587, 42 S.Ct. 590, 66 L.Ed. 1077 (1922); People of Porto Rico v. Livingston, 47 F.2d 712 (1st Cir. 1931), cert. denied 284 U.S. 642, 52 S.Ct. 23, 76 L.Ed. 546 (1931) and Commonwealth of Porto Rico v. Flores, 226 F.Supp. 950 (DC P.R.1964). All these cases involve a factual situation similar to the one at bar. In all the cases the sovereign voluntarily filed suit against a citizen in the state court, thus waiving its sovereign immunity. In all these cases the removal was permitted because a ground for removal existed and was available. In these cases the sovereign did not raise the defense of sovereign immunity from suit, either in federal and local courts, which defense at the dates the cases were filed was available. Said failure to raise the above-mentioned defense was caused by one fact, that is, the sovereign waived its immunity by taking the initiative of starting a suit against the citizen. Porto Rico v. Ramos, 232 U.S. 627, 34 S.Ct. 461, 58 L.Ed. 768 (1914). It is a well settled rule that when a sovereign voluntarily places itself in the position of a suitor, it will be held to have laid aside its sovereign immunity and to have taken on the garb of an ordinary suitor, so far as concerns all matters proper of adjudication growing out of the cause sued on. Missouri v. Homesteaders Life Association, 16 F. Supp. 69 (DC Mo.1936). Of special interest is this case in which a suit by the State of Missouri, by and through its superintendent of insurance department, was filed against the defendant,

2. The Court notes that the defendant Sea-Land Service, Inc., in the prayer set forth in its answer to the complaint, requests from this Court to enter judgment against the plaintiff for whatever amounts are owed to the codefendant warehousing company for warehousing fees. In view of the fact that the attorneys for codefendant Sea-Land do not represent the warehousing company, the other codefendant herein, said prayer is considered by the Court as a surplusage.

who later removed the action, and motions to remand by the plaintiff were denied. In that case the court stated at page 74:

. . . In the case now under consideration the superintendent of the insurance department of the state of Missouri is the plaintiff. If acting for the state in such way as to make the state the real party, then the state is subject to the rule that, when a state voluntarily places itself in the position of a suitor, it will be held to have laid aside its sovereignty and to have taken on the garb of an ordinary suitor so far as concerns all proper matters of adjudication growing out of the cause sued on. 25 R.C.L. § 46, p. 410; 59 C.J. § 469, p. 315; United States v. Diamond Coal & Coke Co. (C.C.A.) 254 F. 266, loc. cit. 268 . . .

In the United States v. Diamond Coal & Coke Co., 254 F. 266 cited above, at page 268, the Court states:

By the terms of the Act of Congress of March 3, 1891, this suit is forever barred unless the court of equity ought to relieve the plaintiff from that bar on the equitable principle which has been stated. The United States accordingly has invoked the aid of the court of equity and of this equitable principle to secure this relief. The equitable claims of a nation or a state appeal to the conscience of a chancellor with the same, but with no greater or less force, than would those of a private citizen under like circumstances, and, barring the effect of mere delay, they are judicable in a court of chancery, to whose jurisdiction the nation or state voluntarily submits them, by every principle and rule of equity applicable to the rights of a private citizen under similar circumstances. United States v. Stinson, 197 U.S. 200, 204, 205, 25 S.Ct. 426, 49 L.Ed. 724; United States v. Detroit Timber & Lumber Co., 131 F. 668, 677, 67 C.C.A. 1, 10; United States v. Debell, 227 F. 775, 779, 142 C.C.A. 299; United States v. Chandler-Dunbar

Water Power Co., 152 F. 25, 81 C.C.A. 221; United States v. Midway Northern Oil Co., (D.C.) 232 F. 619, 631; State of Iowa v. Carr, 191 F. 257, 266, 112 C.C.A. 477, and authorities there cited . . .

■ In view of the foregoing, we conclude that the sovereign immunity plea is of no avail to the plaintiff in this case.

VI

As stated at the beginning of this opinion, the plaintiff alleges that this Court is without jurisdiction to entertain the petition for removal filed by the defendant due to the fact that the complaint and other documents pertaining to Civil Case No. 69–5689, as filed by the plaintiff in the Superior Court of Puerto Rico, San Juan Part, have not been certified as true and correct by the court's interpreter, all in compliance with Rule 9 of this court.

■ The defendant candidly conceded that Rule 9 of this court provides that the documents filed in Spanish with the clerk will be accompanied with a translation certified by the court's interpreter. The defendant also conceded that by ignorance of said rule this was not done, especially as it has been the practice of the members of this bar to file translations of pleadings in Spanish annexed to petitions for removal with a verification under oath. Notwithstanding that fact, the irregularity committed should not be labeled as one tainting the whole procedure of illegality and removing the court's jurisdiction to determine the merits of the petition for removal. The Court understands that the omission can be corrected or amended, as advanced by the defendant in its oral argument, by requesting the official interpreter of the court to certify the translation made. No harm will result to the party complaining of the lack of compliance with Rule 9. Dismissal of the petition for removal on this ground would be too severe in comparison with the harm, if any, caused to the plain-

tiff if the petition for removal is sustained. The record shows that as of this date the official interpreter of this court has certified the translation made.

In view of the foregoing, plaintiff's motion to remand must be, and it is hereby, denied.

It is so ordered.