**FIREMAN'S INSURANCE CO. OF NEWARK, NEW JERSEY, Plaintiff,**

v.

**GULF PUERTO RICO LINES, INC., Defendant.**

**Civ. No. 969-70.**

United States District Court,
D. Puerto Rico.
Sept. 12, 1972.

Charles A. Cordero, San Juan, P. R., for plaintiff.

Jimenez & Fuste, José A. Fusté, San Juan, P. R., for defendant.

## MEMORANDUM ORDER

CANCIO, Chief Judge.

This cause came to be heard on defendant Gulf Puerto Rico Lines, Inc.'s Motion for Summary Judgment dated December 8, 1971 and plaintiff's Opposition thereto dated February 15, 1972. The facts of the case, from the standpoint of this summary judgment incident, are not in dispute.

On or around the month of August 1969, specifically on August 4 of said year, the defendant, as a maritime carrier, moved the shipment the object of the present controversy, to wit, 72 cases of leather, on board the SS. "Maiden Creek", Voyage SL 94S, from the United States to Puerto Rico, pursuant to Waybill No. 15–789953, a copy of which was annexed to defendant's Motion for Summary Judgment marked as "Exhibit A".

The above described merchandise was delivered in Puerto Rico at the port of Ponce on August 13 and 18, 1969, as evidenced by cart checks (delivery receipts) numbers 15123, 15108 and 15119, attached and marked as Exhibits B, C and D, respectively, to defendant's Motion for Summary Judgment.

The present action was filed after more than one year had elapsed since the time of delivery. Specifically, the action was filed on the 1st day of the month of October, 1970, summons having been served on the 5th day of said month and year.

The action, filed originally before the local courts of Puerto Rico, was removed therefrom to this court pursuant to 28 U.S.C.A. § 1337, since the case involves issues arising under the United States Harter Act, 46 U.S.C.A. § 190 et seq. and/or the United States Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., which are Acts of Congress enacted to regulate commerce. Crispin Co. v. Lykes Bros. S. S. Co., 134 F.Supp. 704 (S.D.Tex.1955); Commonwealth of Puerto Rico v. Sea-Land Service, Inc. et al., 349 F.Supp. 964. Memorandum Order of March 31, 1970, not officially reported.

The moving party in this summary judgment case, Gulf Puerto Rico Lines, Inc., has sustained the position that the present action is time barred since the same was filed after more than one year had elapsed from actual delivery of the goods pursuant to Section (6) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(6). Said provision of law has been invoked since defendant's short-form bill of lading incorporated by reference its regular long-form bill of lading which, pursuant to Section 13 of the Carriage of Goods by Sea Act (46 U.S.C.A. § 1312), incorporated into domestic traffic the provisions of the Carriage of Goods by Sea Act.

On the other hand, the plaintiff opposes the summary judgment requested by the defendant on the following grounds:

(1) that the defendant is estopped from raising the time-for-suit provision;

(2) that the Carriage of Goods by Sea Act does not *sub-silentio* eliminate Section 1873 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5303 which interrupts prescription;

(3) that the Carriage of Goods by Sea Act does not eliminate all other applicable causes of action available against the carrier; and

(4) that an issue of facts exists which defeats the summary judgment requested.

In so doing, the plaintiff alleges that the defendant is estopped from raising the time-for-suit provision. In order to sustain its position the plaintiff cites the case of Michelena & Co. v. American Export & Isbrandtsen Lines, 258 F. Supp. 479 (D.C.P.R.1966) and makes reference to an affidavit signed by Mr. Fred Hegner, Claims Supervisor for the adjustment bureau that represented the plaintiff. Before examining Mr. Hegner's affidavit and accompanying exhibits, we will discuss the applicability of the Maritime Law in general to the maritime contract of transportation and, later, the *Michelena* doctrine and its applicability to this case, since the same constitutes an important issue that should be clarified.

## I.

Although the law applicable *ex proprio vigore* to coastwise traffic, that is, maritime traffic between ports in the United States and Puerto Rico, is the Harter Act of 1893, 46 U.S.C.A. § 190 et seq., by virtue of Section 13 of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1312, said Carriage of Goods by Sea Act can be incorporated in a contract of coastwise carriage to be the law governing the contractual relationship between the parties to a maritime contract of transportation of such nature. Rhode Island Insurance Co. v. Pope Talbott Line, 78 D.P.R. 454 (1956); Globe Solvents Co. v. California, 167 F.2d 859 (3rd Cir. 1948); Waterman S.S. Corp.

v. United States Smelting, Refining & Mining Co., 5 Cir., 155 F.2d 687, cert. den. 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656 (1946).

Said incorporation of COGSA in domestic or coastwise traffic is made by expressly incorporating said Act as a contractual disposition in the carrier's long-form bill of lading. In our case the defendant's long-form bill of lading provides as follows, as evidenced by its Motion for Summary Judgment:

"This bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein. Nothing herein contained shall be construed to be a surrender of any of the rights or immunities, or an increase of any of the responsibilities or liabilities of the carrier under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent but no further. The provisions of said Act (but only to the extent that there may be any liability at all on the part of the carrier, and except as may otherwise be provided herein) govern the reciprocal relationship thereunder of the carrier on the one hand, and the shipper consignee and goods on the other, before the goods are loaded on, and after they are discharged from the ship, and throughout the entire time during which the goods are in the custody of the carrier. The carrier shall in no event be liable, in any capacity whatever, for any delay, non-delivery, misdelivery, for any loss or damage, occurring while the goods are not in its actual custody."

In turn, Section 3(6) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(6), provides in its pertinent part as follows:

"In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered . . . ."

It being an undisputed fact that the present action was filed after more than one year had elapsed from the time of delivery, contrary to Section 3(6) of COGSA, the present action is time barred and summary judgment should be entered on behalf of the defendant. Ziferrer v. Atlantic Lines, Limited, 278 F. Supp. 736 (D.C.P.R.1968); Midstate Horticultural Co. v. Penn. R.R. Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96 (1943), cited with approval in M.V.M. Inc. v. St. Paul Fire & Marine Insurance Co., 156 F.Supp. 879 (SDNY 1957); 63 Harv.Law Rev. 1176; Burdines Inc. v. Pan Atlantic SS. Co., 199 F.2d 571 (5th Cir. 1952); United States v. South Star, 210 F.2d 44 (2nd Cir. 1954); Gulf P. R. Lines v. Maicera Criolla, Inc., 309 F. Supp. 539 (D.C.P.R.1969).

Before we enter into the discussion of the arguments advanced by the plaintiff in its Memorandum in opposition to defendant's Motion for Summary Judgment, specifically the one that called for the application of the doctrine of Michelena & Co. v. American Export & Isbrandtsen Lines, 258 F.Supp. 479 (D.C.P.R.1966), we will say more about the Carriage of Goods by Sea Act and its time-for-suit provision contained in Section 3(6) of the Act (46 U.S.C.A. § 1303(6).

The Carriage of Goods by Sea Act proceeds from the Hague Rules of 1921 approved in the Brussels Convention of 1922–1924. A similar statute has been adopted by various countries,[1] having as

---

1. The following countries have adopted the COGSA: Algeria, Argentina, Australia, Belgium, Burma, Canada, Ceylon, Denmark, Egypt, Finland, France, Germany, Great Britain, Hungary, India, Ireland, Italy, Ivory Coast, Japan, Monaco, Netherlands, Norway, Pakistan, Peru, Poland, Portugal, Portuguese Colonies, Rumania, Spain, Sweden, Switzerland, Tanganyika, Turkey, United States of America, Yugoslavia.

their general purpose the unification or standardization of the principal provisions of the maritime contract for carriage. There is no doubt in the mind of the commentators, and the courts have so agreed, that the driving force behind the movement which led to the standardization of the statements and propositions stated in the Brussels Convention, and more or less faithfully reflected in the individual national legislation, was the need of assurance that at least the greater number of questions posed by bills of lading was to receive the same answer in the courts of all nations: This was expressed in the petition for certiorari in The Venice Maru, 1943 A. M.C. 1209. In that case the Supreme Court of the United States restored harmony between the interpretation under the British Carriage of Goods by Sea Act and the United States statute as to an interpretation relating to the fire statute pursuant to said Act. Knauth, Ocean Bills of Lading, 1953, American Maritime Cases Publication, Baltimore, Md., pages 115 et seq.

Assuming, for the sake of argument, that there was damage to the shipment the object of this suit, imputable to the defendant maritime carrier, and accepting as all the parties reasonably must accept, that the Complaint was filed after the one-year period from the date of delivery had elapsed, it is of utmost importance for this court to properly advise all concerned as to the nature of the time-for-suit provision under the Carriage of Goods by Sea Act. Of specific interest, the subject of alleged malicious misrepresentations and their possible tolling effect should be fully discussed by this court.

Section 3(6) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(6), reads literally as follows:

"(6) Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading. If the loss or damage is not apparent, the notice must be given within three days of the delivery.

"Said notice of loss or damage may be endorsed upon the receipt for the goods given by the person taking delivery thereof.

"The notice in writing need not be given if the state of the goods has at the time of their receipt been the subject of joint survey or inspection.

"In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered: Provided, That if a notice of loss or damage, either apparent or concealed, is not given as provided for in this section, that fact shall not affect or prejudice the right of the shipper to bring suit within one year after the delivery of the goods or the date when the goods should have been delivered.

"In the case of any actual or apprehended loss or damage the carrier and receiver shall give all reasonable facilities to each other for inspecting and tallying the goods."

■ The one-year time-for-suit clause is of the greatest importance. The suit must be brought within one year even if the carrier has failed to use due diligence to make the ship seaworthy and in so doing has caused damage to the cargo. Mere failure to use due diligence does not forfeit the benefit of the one-year-suit clause. In The Carso, 1937 A. M.C. 1078, the untruthful issue of a clean bill of lading for cargo obviously in bad order did not estop the carrier from successfully invoking a one-year Hague Rule time-for-suit clause in the bill of lading contract.

■ It is important to observe that the time for suit under the Carriage of

Goods by Sea Act is exactly one year from the date when the goods were delivered by the ship or carrier to the consignee or third party beneficiary under the contract of carriage, as it happens with order bills of lading duly negotiated, whereas the time for suit under the Interstate Commerce Act governing railway bills of lading is not less than two years from the date when the carrier finally rejects the claim. The one-year time limit of the Carriage of Goods by Sea Act is strictly enforced by the courts. Armstrong v. The Mormacmar, 1952 A.M.C. 1088, at 1089; International Harvester Co. v. Knudsen, 1952 A.M.C. 900; Singer Hosiery Mills v. Cunard, 1951 A.M.C. 988; Franco Steel Corp. v. Nederlandsch Amerikaanische, 1967 A.M.C. 2440; Commodity Service v. Furness Withy, 1964 A.M.C. 760. Many cases along these lines can be cited to the same effect, that is, if suit is not brought within one year after the date of delivery or when the goods should have been delivered, and in the absence of facts tolling the time-for-suit provision as contemplated in the statute by express agreement between the parties to that effect, the action is time barred.

A question most important to the parties to this action is whether any event can stop the running of the one-year limit. The court's research shows that the Brussels Convention and the Carriage of Goods by Sea Act's legislative record are silent as to suspension of the running of the one year limit right to sue. On the contrary, there is case law to the effect that the time limit being statutory, it is absolute in the terms of the statute, that no suspension of the time is to be granted except by express agreement of the parties as contemplated by the statute. In M. V. M. Inc. v. St. Paul Fire & Marine Insurance Co., 156 F.Supp. 879 (SDNY 1957), Judge Levet from the Southern District of New York, at page 883, stated:

"The one year time-for-suit clause of the United States Carriage of Goods by Sea Act, 46 U.S.C.A. 1303(6), is of its own force and effect applicable to these contracts of carriage. This suit clause is one which extinguishes the cause of action itself, and not merely the remedy."

In so deciding the Court cited the Supreme Court of the United States in Midstate Horticultural Co., Inc. v. Pennsylvania RR. Co., 1943, 320 U.S. 356, at page 364, 64 S.Ct. 128, at page 132, 88 L.Ed. 96, where it was stated:

"The purport of the decisions is that Congress intended, when the period has run, to put an end to the substantive claim and the corresponding liability. The cause of action, the very foundation for relief, is extinguished. Thus, in A. J. Phillips Co. v. Grand Trunk Western Ry. Co., this Court held the objection to the timeliness of the shipper's suit properly was raised by demurrer, and said that 'the lapse of time . . . destroys the liability . . . whether complaint is filed with the Commission or suit is brought in a court of competent jurisdiction.' 236 U.S. 662, 667, 35 S.Ct. 444, 446, 59 L.Ed. 774."

The above cited case, which was decided under the Interstate Commerce Act, shows a similar policy to that of the Carriage of Goods by Sea Act. It shows that the time-for-suit provision is to be strictly enforced as a statutory term. Said term is of the nature of a caducity term under civil law as said term has been defined by this court in R. P. Farnsworth & Co. v. P. R. Urban Renewal & Housing Corp., 289 F.Supp. 666 (D.C., 1968). As stated by this court in the *Farnsworth* case, *supra,* a caducity term has the following characteristics:

(1) It has the effect of extinguishing the right to a cause of action;

(2) Its purpose is to determine beforehand a specific amount of time during which the cause of action may be exercised;

(3) It admits no interruption, that is, its extinguishing effect or barring effect is absolute and runs automatically with time;

(4) It can be raised as a defense by the court *ex-officio judicis*; and

(5) The cause of action is barred forever once the caducity period has elapsed.

Section 3(6) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(6), also has been considered a caducity term by the Superior Court of Puerto Rico, San Juan Section, sitting as an appellate court in the case of Ferretería San José v. South Atlantic & Caribbean Lines, Inc., Civil No. 69–6286, copy of which was furnished by the defendant in the Spanish language and marked Exhibit 1 to its Brief. This case has persuasive weight in this respect since it was decided by a court of competent admiralty jurisdiction pursuant to the saving-to-suitor's clause of 28 U.S.C.A. § 1333. In that case, Judge Lucas Serbiá Córdova stated in the Spanish language, now duly translated by this court as follows:

"Section 1303(6) [3(6)] of the Carriage of Goods by Sea Act provides that the maritime carrier shall be discharged of all kinds of responsibility in relation to damages unless the interested party files its complaint within one year from the date of the delivery of the merchandise. Said term of one year is a substantive caducity term and no suspension or interruption causes can be admitted since the extinguishing effect is radical and automatic . . .

"Said clause was drafted and is valid as a caducity term of substantive nature and the same cannot be interrupted by extrajudicial claims. Only the filing of the complaint interrupts the term . . ."

In so deciding, the Superior Court of Puerto Rico in the above mentioned case distinguished the case of Michelena & Co. v. American Export & Isbrandtsen Lines, 258 F.Supp. 479 (D.C.P.R.1966) decided by this Judge, in which the plaintiff, in that case as well as in the present one, heavily relied in an effort to obtain a toll of the statute of limitations.

Even if the law is as stated in this Memorandum Order to the effect that extrajudicial statements and conversations do not toll the time-for-suit provision, we have to consider that in this district we have the *Michelena* doctrine already mentioned, to the effect that malicious misrepresentations by the carrier directed to divert the attention of the consignee to a possible settlement until the time for suit elapses, estops the carrier from asserting the defense. For that reason the *Michelena* rationale should be fully analyzed and discussed further for the benefit of the Bar.

The *Michelena* case decided by this Judge is a unique case, departing from the above outline law, as admitted by the undersigned in his decision in *Michelena,* due to its unique circumstances. In said case the defendant carrier admitted that settlement conversations took place up to the time when the time for suit had expired and later backed out of said negotiations. Under those circumstances, the Court relied on equity principles pursuant to Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), because it could not be permitted that in such a case, on the admission of the carrier, he, the carrier, be permitted to obtain benefit from its own wrongdoing. While deciding on principles of equity forced by the admission on the part of the carrier as to the misrepresentations, this court observed that the law seemed to be clear in that the period for the statute of limitations will not be interrupted by settlement conversations, thus recognizing that the case and the decision behind it was governed exclusively by the undoubtedly malicious misrepresentations of the carrier which were admitted for the purposes of record. The *Michelena* doctrine is undoubtedly unique and predicated on equity principles. Its uniqueness has been considered by other courts as in Ferretería San José v. South Atlantic & Caribbean Lines, Inc., Superior Court of Puerto Rico, above cited, in which the Court stated in the Spanish language at pages

8 and 9 of its opinion and this court now translates, as follows:

"As a second error the plaintiff alleges that the District Court erred in not applying the doctrine established in the case of Michelena & Co. v. American Export and Isbrandtsen, Inc., 258 F.Supp. 479 (D.C., 1966). The plaintiff appellant alleges that it has been decided by the United States District Court for the District of Puerto Rico that promises of payment on the part of the steamship company interrupt the caducity term incorporated in the Carriage of Goods by Sea Act. The interpretation given to the case of Michelena & Co., *supra,* by the plaintiff is not correct.

"The *Michelena* case is unique in the federal case law, and the same contemplates a unique situation of facts. In *Michelena* it happened that manifestations and promises were made up to the time in which the one-year period expired. Said manifestations were made with the express intention of defrauding the plaintiff. Under those circumstances the court decided basing its decision on equity principles. The case before our consideration is different from the case of *Michelena.* In our case there were various conversations after the date of delivery up to and including June 24, 1968. In said conversations the steamship company did not promise anything to the plaintiff. It was in October 1968 that allegedly the plaintiff promised to pay the claim, which fact was denied. It was on this occasion that allegedly payment was promised within the next days. Notwithstanding, the defendant allegedly did not comply with its promise to pay within the next days and it was not until April 11, 1969 that the complaint was filed, that is, six months after the alleged promise. During those six months nothing was promised and nothing was done by the plaintiff to make his claim valid. The situation was not like in the Michelena case, in which the manifestations were contin-

uous and up to the time of the expiration of the one-year limit. Under those circumstances, and due to the restrictive scope to be given to the *Michelena* case, it being a unique situation, the plaintiff should not prevail in this aspect."

In other words, the *Michelena* doctrine is not a valid defense for all cargo claims against carriers. Its merits are of no application to every cargo claim even though in practically all of them settlement conversations or exploration conversations to that effect are held.

In relation to alleged representations on the part of the defendant, we will analyze the affidavit and supporting documents given by Mr. Hegner in support of plaintiff's opposition to defendant's Motion for Summary Judgment.

The plaintiff has made an effort to prove malicious misrepresentations under *Michelena* with Mr. Hegner's affidavit, specifically Mr. Hegner's reference to a series of letters exchanged between the parties regarding settlement negotiations. An examination of these letters in chronological order will show that no such malicious misrepresentations occurred. The first letter appears dated August 22, 1969, directed to Gulf Puerto Rico Lines, Inc., Ponce, Puerto Rico, to the attention of Mr. Antonio Vidal, signed by José A. Vargas from Ponce Tanning Corporation. The letter simply states that the shipment was received in the month of August 1969 and that the same was in poor condition; further the letter states that they were checking the shipment and that they will let the defendant know of any discrepancies or shortages. The second letter annexed to Mr. Hegner's affidavit appears dated September 5, 1969 and contains practically the same language as the previous letter. This letter is directed to the same person and is signed by the same official of Ponce Tanning Corporation and closes by stating that they are in the process of checking the shipment and that they will let the carrier know of any discrepancies or shortages.

The third letter was sent by Mr. Fred Hegner personally as Marine Claims Supervisor for Underwriters Adjustment Company, San Juan, Puerto Rico, adjusters for plaintiff herein. In the letter directed to Mr. Antonio Vidal, Gulf Puerto Rico Lines, Ponce, Puerto Rico, a similar claim was established against the carrier as of August 25, 1970. At the time of the mailing of said letter the statute of limitations had run against the plaintiff, since more than one year had elapsed from the date of delivery, which occurred early in the month of August 1969. Mr. Hegner's letter was answered by a fourth letter from Mr. Antonio Vidal, Gulf Puerto Rico Lines, Ponce, Puerto Rico, dated August 31, 1970, informing him that his formal claim filed by means of his letter of August 25, 1970 had been referred to Mr. Fred Evans from Gulf Puerto Rico Lines, San Juan, Puerto Rico, and that said San Juan office would communicate directly with Mr. Hegner in relation to the claim. The last letter is a letter written by J. L. Oliver, Gulf Puerto Rico Lines, San Juan, Puerto Rico, bearing date of September 9, 1970, directed to Mr. Hegner, informing him that the claim was time barred under the Carriage of Goods by Sea Act. From an examination of this set of five letters the court sees no malicious misrepresentations on the part of the carrier. On the contrary, it is evident from the chronological order of the same that the first formal claim was filed by Mr. Hegner after the plaintiff herein had paid Ponce Tanning Corporation the damages suffered and after the plaintiff decided to subrogate itself in the rights of Ponce Tanning Corporation against the defendant carrier. The first formal claim that was made by Mr. Hegner in his letter directed to Gulf Puerto Rico Lines on August 25, 1970, was evidently made after the time for suit had expired and Gulf Puerto Rico Lines declined the claim for that reason.

■ For the reasons above stated the court is of the opinion that plaintiff's first argument in opposition to defend-ant's Motion for Summary Judgment has no merit in law.

## II.

As a second and third argument in opposition to defendant's Motion for Summary Judgment the plaintiff alleges that COGSA does not *sub silentio* eliminate Section 1873 of the Civil Code of Puerto Rico, 31 LPRA 5303, which interrupts prescription and that COGSA does not eliminate all other applicable causes of action against the carrier. A reading of plaintiff's brief in opposition shows that what plaintiff means is that the letters exchanged between the parties and annexed to Mr. Hegner's affidavit constitute an interruption of the time-for-suit provision; that the defendant understands that this court should rule that a private contract (bill of lading) does not eliminate all other causes of action available to the plaintiff; that the plaintiff's action is based on tort and not on contract; that the time limitation invoked by the defendant shortens the time required to sue under the contract; and that since this is an action for unseaworthiness it should be a tort action and not an action in contract.

■ A careful analysis of plaintiff's arguments shows that the same find no support in Admiralty Law. In the first place, the possibility of an interruption of the time-for-suit provision has been fully discussed herein and the only conclusion to be reached is that the term incorporated into the United States Carriage of Goods by Sea Act is a statutory term, a caducity term which admits no interruption. Furthermore, it can be stated that since the United States Carriage of Goods by Sea Act is applicable to this case, the Civil Code of Puerto Rico has no bearing in the decision to be taken by this court since this is an admiralty and maritime claim.

■ The fact that in maritime cases the court is to apply federal Maritime Law is a recognized principle of law. The Constitution of the United States is silent as to the source of the substantive

law to be applied in the federal district courts in cases of admiralty and maritime jurisdiction, that is, cases involving maritime contracts, maritime torts and others, as happens in the present case. During the colonial period the word "jurisdiction" was frequently used to refer to a general authority to govern and not just to the scope of judicial authority. But it is reasonably clear, from both the wording of the Constitution and its legislative history, that the constitutional convention meant to refer to judicial authority only. See Article III of the Constitution of the United States, specifically Section 2 of said Article, which by its terms extends the judicial power of the United States to admiralty and maritime cases. See also Goodman, Eighteenth Century Conflict of Laws, 5 Amer.J. of Leg.Hist. 326, 1961. Nevertheless, obvious necessity buttressed by notions of the traditional independence of the law of the sea has led the constitutional language to be read to mean that there is a substantive maritime law in force and implicitly adopted in the United States. This is a general maritime law molded and modified to meet the needs of the New World. It is federal law, to some extent congressionally fixed, as it happened by the Carriage of Goods by Sea Act, but to a large extent enunciated by the courts sitting in admiralty independently of statute or in absence of statute. Black, Admiralty Jurisdiction, 50 Colum.L.Rev. 259–262 (1950); Stimson, Swift v. Tyson, What Remains, What is State Law, 24 Corn.L.Q. 54 (1938).

In 1870 a change occurred in the Supreme Court of the United States and President Grant named Joseph P. Bradley to the Supreme Court to sit as justice. Almost immediately he assumed the mantle of Justice Story as the chief admiralty authority in the United States Supreme Court. In 1875, in Lottawanna, 88 U.S. 558, 22 L.Ed. 654 (1875), Justice Bradley undertook what has been termed the first complete analysis of the Admiralty Law since the days when it was reviewed as a branch of the Law of Nations. The principal question involved in Lottawanna case was whether a maritime lien arose in favor of a home port furnisher of repairs and supplies. The same question had been answered negatively about fifty years earlier in General Smith, 17 U.S. 438, 4 L.Ed. 609 (1819). Counsel in the Lottawanna urged that the General Smith decision was contrary to the general maritime law and should consequently be overruled. Justice Bradley, in his opinion in the Lottawanna case, found little difficulty to sustain that General Smith was no longer valid law. His opinion stated that, while it is true that there exists a great mass of maritime law which is the same in all commercial countries, at the same time the Maritime Law is only so far operative as law in any country as it is adopted by the laws and usages of that country. Therefore, the question of whether a home port supplier was entitled to a maritime lien was a question of United States Admiralty Law, that is, federal law exclusively.

Since the decision of Justice Bradley in the Lottawanna case, it has been taken as settled that the United States courts are not bound to follow any segment of maritime law that is not maritime national law. Mr. Justice Holmes has put the matter in his sharp, drastic and precise method of opinion-writing and said in the case of Western Maid, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299 (1922), that in deciding this question we must realize that however ancient the traditions of the Maritime Law may be, however diverse the sources from which it has been drawn, it derives its whole power in this country from its having been accepted and adopted by the United States. To this, Justice Holmes added that there is no mystic overlaw to which the United States must bow.

Notwithstanding all this, it is important to note that a great part of the federal state choice of laws tangled in maritime cases is intimately involved with the notion that federal maritime law is in some sense a brooding omnipresence over the sea. The idea of the brooding

omnipresence, that is, the idea of the uniformity of the federal Maritime Law under the American flag was expressed by Chief Justice Marshall as early as 1828. At that time he expressed that admiralty cases do not arise under the Constitution or laws of the United States but are as old as navigation itself and that the Law of Admiralty as it has existed for ages is applied by our courts (referring to federal courts) to the cases as they arise. American Insurance Co. v. Canter, 26 U.S. 511, 7 L.Ed. 242 (1828). It is clear that as to maritime matters the prevailing assumption has been that the constitutional grant of admiralty jurisdiction to the federal courts presupposes the existence of an at large body of substantive maritime law to be drawn upon in deciding maritime cases. The weight of such assumption in the choice of law cases has been great. Once it is assumed that the Constitution presupposed the existence of a body of maritime law, deciding that the law is binding in all courts, admiralty or common law is but a step. Stumberg, Maritime Cases in Common Law Courts, 3 Tex.L.Rev. 246 (1925). If the body of legal principles adopted or created by the federal admiralty courts is merely another form of federal common law masquerading under the title of general maritime law, then it has seemed obvious to many scholars that cases of admiralty and maritime jurisdiction must be governed by those principles, no matter what forum, state or federal, is charged with the task of deciding such cases. See Gilmore and Black, The Law of Admiralty, The Foundation Press Inc., 1957, Sections 1–16 et seq., page 40 et seq.

Just as the Constitution does not specify the source of the substantive law to be applied by the federal courts in cases of admiralty and maritime jurisdiction, the Judiciary Act of 1789, specifically Section 9 of said Act, which nowadays is contained in Section 1333 of Title 28 U.S. Code, did not disclose the source or sources of the substantive law to be applied in those cases in which a remedy at common law was saved pursuant to the saving to suitors clause. The grant of admiralty jurisdiction was read to support the authority of federal judges to declare the federal substantive maritime law and the power of Congress to legislate for maritime matters. Stevens, Erie v. Tomkins and the Uniform General Maritime Law, 64 Harv.L.Rev. 246 (1950). An analogous development with regard to maritime cases in state courts would have been entirely possible. Indeed, if Justice Story's view that the Constitution compels the saving of a remedy where the common law is competent to give it is correct, and if the Constitution preserves the jurisdiction of the common law courts in the same manner as it grants authority to the Federal Government, then state judicial and legislative authority with respect to the articulation of substantive maritime principles would seem necessary to follow. That this development has not come to pass is a tribute to the potency of the powerfully felt requirement of international uniformity in the area of maritime law.

It has been said that the uniformity requirement is actually an elliptical description of the maritime laws' essential insulation from the diverse and parochial tendencies of the local laws of the several states. Dickinson and Andrews, A Decade of Admiralty in the Supreme Court of the United States, 36 Calif.L.Rev. 169 (1948). The requirement of uniformity operates on two broad fronts: (1) it prescribes that the federal admiralty courts proceed according to the national maritime law and limits their power to borrow local law by way of supplementation or modification thereof; and (2) it places analogous limitations on the power of state courts to apply local law to maritime matters which are to be decided pursuant to the federal substantive maritime law whether congressionally adopted or judicially construed. In relation to this second front, it can be further stated that if a case is one of admiralty and maritime jurisdiction, the fact that it is brought

in a state court under the saving clause in no way relaxes the need for application of a uniform substantive maritime law. Statements to this effect are frequently made in eminently respectable quarters. See, for example, Currie, The Silver Oar and All That, 27 U.Chi.L.Rev. 1 (1959). In said Law Review article, Professor Currie stated that there are difficulties attending the question of what law, state or federal, applies in maritime cases, but that one thing is reasonably clear, that is, that in all maritime cases the same law, state or federal, is applied whether the action is in a state court or a federal court and if in a federal court, whether on the law side or the admiralty side.

From the above discussion in general terms of the topic of substantive law in maritime cases, it can be stated that plaintiff's proposition that the Civil Code of Puerto Rico applies to the present case lacks weight in law. The Supreme Court of Puerto Rico has decided in the case of Rhode Island Insurance Co. v. Pope & Talbott Lines, 78 D. P.R. 454 (1955) that the Carriage of Goods by Sea Act is applicable to a shipment of cargo between ports of the United States and Puerto Rico when the same is incorporated, pursuant to Section 13 of said Act, 46 U.S.C.A. § 1312, to the contract of carriage between the parties. It follows from the decision of Justice Borinquen Marrero that necessarily all rights and immunities provided for by the Act in favor of the cargo interest and against the carrier necessarily will be governed by said federal statute, to wit, the Carriage of Goods by Sea Act. The same rationale was followed in the case of The Commonwealth of Puerto Rico v. Sea-Land Service, Inc. et al., 349 F.Supp. 964, of March 31, 1970, in which this court has stated that a contractual relationship like the one the object of this suit is governed by the Carriage of Goods by Sea Act.

In relation to plaintiff's allegation that the Carriage of Goods by Sea Act does not eliminate all other causes of action against the carrier, we notice in its brief and arguments in respect to said contention that what plaintiff means is that the time limitation invoked by the defendant shortens the time required to sue under the contract and that, since this is an action for unseaworthiness, it should be a tort action and not an action in contract. In order to dispose of plaintiff's argument, we will first state that the defendant does not seem to pretend to shorten any term prescribed by the applicable time-for-suit provision. At all material times the defendant has argued that the time-for-suit provision applicable to this case is the one contained in Section 3(6) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(6). In regard to the doctrine of unseaworthiness, it will suffice to say that such doctrine plays no role in the case at bar since it regulates the availability on behalf of the carrier of the defenses contained in the Carriage of Goods by Sea Act when a case is being litigated on its merits as a condition precedent for the carrier to avail itself of the immunities and defenses contained in the Carriage of Goods by Sea Act. The Carriage of Goods by Sea Act shows that the doctrine of unseaworthiness has no application to this summary judgment incident.

### III.

Before closing this Memorandum Order, we will discuss plaintiff's fourth argument in opposition to defendant's Motion for Summary Judgment, that is, that an issue of facts exists and that said issue of facts defeats the summary judgment requested by the defendant. An examination of plaintiff's brief shows that its fourth argument in opposition relies strictly on Mr. Fred Hegner's affidavit, which, in the words of plaintiff, "constitutes in the very least a fact issue as to the applicability of estoppel in the case at bar." The court has fully discussed the question of estoppel in this Memorandum Order and will not repeat the arguments at this time. Furthermore, the court states that the plaintiff did not meet the

burden required by the rules in order to sustain its position contained in its Brief in opposition to Motion for Summary Judgment. A bare contention that an issue of fact exists is not sufficient in law to prevent a court from granting a summary judgment, especially when a *prima facie* case has been established by the defendant as it happens in the case at bar. Bruce Construction Corporation v. United States, 242 F.2d 853 (5th Cir. 1957); Wilkinson v. Powell, 149 F.2d 335 (5th Cir. 1941); Engl v. Aetna Life Ins. Co., 139 F.2d 469 (2nd Cir. 1943); Ortiz v. National Liberty Insurance Company, 75 F.Supp. 550 (D.C.P.R. 1948).

In view of the foregoing and taking into consideration all the facts of the case, it is Ordered that Summary Judgment be and hereby is entered on behalf of the defendant, Gulf Puerto Rico Lines, Inc., dismissing the Complaint filed herein.