STAINLESS STEEL AND METAL MAN-
UFACTURING CORPORATION,
Plaintiff,

v.

SACAL V. I., INC., Defendant.

Civ. No. 506–69.

United States District Court,
D. Puerto Rico.

March 28, 1978.

Wilfredo A. Géigel, Santurce, P.R., for plaintiff.

José Antonio Fusté, Jiménez & Fusté, San Juan, P.R., for defendant.

## MEMORANDUM OPINION

PESQUERA, District Judge,

This is an action pursuant to a maritime contract of transportation initially filed in the local courts of the Commonwealth of Puerto Rico and removed therefrom to this Court under 28 U.S.C. § 1441 et seq. The basic facts were stipulated as part of the proposed pretrial order which was approved by the Court. Plaintiff's position is that in addition to a cause of action under the maritime contract for transportation, there exists a cause of action on its behalf pursuant to 31 LPRA 5141, that is, Puerto Rico's General Negligence Statute contained in the Civil Code, 1930 Edition. The defendant denies that this cause of action exists. The jurisdiction of this Court pursuant to the removal statute contained in 28 U.S.C. § 1441, et seq. and the admiralty and maritime jurisdiction of this Court under 28 U.S.C. § 1333 is undisputed. Removal under 28 U.S.C. § 1337 and *Commonwealth of Puerto Rico v. Sea-Land Service, Inc.*, 349 F.Supp. 964 (DCPR 1973) is acceptable to the parties and the Court finds that insofar as that jurisdictional aspect the matter is well entertained.

### The Basic Facts

It appears that on July 22, 1968 Sacal V. I., Inc., a maritime carrier engaged in maritime transportation, duly licensed by federal authorities, issued its bill of lading No. 10C–SE. Said bill of lading was issued mentioning that the ship which was to carry certain merchandise was to be the M/V Santa Inez on her voyage 130 from San Juan, Puerto Rico to St. Croix, U.S. Virgin Islands.

The shipper appears to be, from the facts of the bill of lading, Stainless Steel and Metal Manufacturing Corporation, of Guay-nabo, Puerto Rico, and the consignee Harvey Aluminum, with address in St. Croix, U.S. Virgin Islands. The notify party was the same as the consignee, i. e., Harvey Aluminum, St. Croix, U.S. Virgin Islands. Among the description of packages and goods contained in said bill of lading, there appears a motor crane with a capacity of 2,480 cubic feet.

The vessel in question departed from the port of San Juan carrying, among other merchandise, the motor crane described, and upon arrival at the port of Christiansted, St. Croix, U.S. Virgin Islands, defendant Sacal V. I., Inc. (hereinafter Sacal) proceeded with the discharge of the vessel in the following manner: On that particular occasion, a shore crane was rented by Sacal from Rental Equipment Co., which is not a party to this suit, to perform the discharge operations of the M/V Santa Inez. Upon unloading the motor crane in question from the top deck of the M/V Santa Inez by means of the shore crane leased from Rental Equipment Co., the motor crane unit was damaged when, as it was swung towards the pier, it caused the shore crane to move. This motion panicked the shore crane operator. He was unable to lower the motor crane properly losing control of the shore crane and causing the motor crane to fall against the dock.

As a result of this incident, the plaintiff claims that due to the negligence of the defendant the damages contemplated in the amended complaint dated August 2, 1969 were suffered by said plaintiff. Specifically it has been claimed that the plaintiff could not move the equipment on the day in question, incurring in losses for the day amounting to $350; that since there was no other crane available, it was impossible for it to commence contract work which further caused damages in the amount of $600; that the eventual work that was to be done

with the use of the crane in St. Croix caused delayed work penalties amounting to $1,400; that an additional crane had to be rented from Robert L. Merwin & Co. with a cost of $5,000; that since the crane rented from Merwin was different to the one damaged there was a delay of fifteen days due to the inexperience of the operator of the second crane with a cost of $2,800 and that various miscellaneous disbursements were also incurred as a result of the accident, to wit, the need of a welding machine, a frame crane truck, gasoline, lumber, oxygen and acetylene amounting roughly to $1,270.[1]

Defendant admitted that the accident occurred without any comparative negligence on the part of the plaintiff, being it understood that the admission was limited only to the act of dropping the crane from the M/V Santa Inez and without it being considered an admission of negligence on the part of the defendant.

The parties further stipulated that the motor crane allegedly damaged belonged at all material times to Mr. Rodolfo Martinez and not to Stainless Steel and Metal Manufacturing Corporation, who was the sole and exclusive plaintiff in this action.

Trial of this cause having been held before the Court, and upon examination of the evidence received therein together with the lengthy memoranda filed by the parties, we are of the opinion that the complaint in this case should be dismissed.

## The Applicable Law

This case poses for decision important questions of the uniform application of Federal Maritime Law to cases arising within the navigable waters of the United States and specifically raises the issue of whether Puerto Rico's General Negligence Statute contained in the Civil Code of Puerto Rico, 1930 Edition, 31 LPRA 5141, is of application to a situation like the one now before our consideration. Plaintiff has also raised the possible applicability to this case of the

---

1. There is also a claim for loss of income and business reputation, the total amount claimed being $64,000.

Admiralty Extension Act, 46 U.S.C. § 740; the applicability of the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq.; the possibility of equitable relief within the admiralty and maritime jurisdiction, as well as the right of a party who is not the owner of a damaged crane to bring an action for consequential damages as a result of its inability to use the crane at the port of destination to perform a contract with third parties after the same was rendered useless as a result of the accident described herein. We will consider the various points raised in the order mentioned above.

I

Plaintiff contends that pursuant to the "saving to suitor's clause" contained in 28 U.S.C. § 1333, it is entitled to bring an action pursuant to Puerto Rico's negligence statute, Section 1802 of the Civil Code, 31 LPRA 5141, and that in any event it is entitled to a remedy pursuant to the Admiralty Extension Act, 46 U.S.C. § 740.

Plaintiff's contention in this respect is twofold. We will thus give separate treatment to each portion of its argument. The true meaning and intent of the saving to suitor's clause is to permit a concurrency of federal and state judiciary in all cases of admiralty and maritime jurisdiction (excluding those actions in rem and others limited to the federal judiciary) by virtue of decisions from the Supreme Court of the United States, with the understanding that in all cases filed either in local or federal courts, federal general maritime law is to apply. In order to bring forward the true import of the saving to suitor's clause the following exposition is necessary.

The saving to suitor's clause contained in 28 U.S.C. § 1333 proceeds from Section 9 of the Judiciary Act of 1789 which while bestowing "exclusive" admiralty jurisdiction on the United States District Courts, saved to suitors, in all cases, the right of a common law remedy where common law was competent to afford the same. Obviously, the exclusivity contained in the saving to suitor's clause and the saving itself are pretty much correlatives.

Summarily, the result of the cases is that a suitor who holds an in personam claim, which might be enforced by an action in personam in admiralty, may also bring suit, at his election, in the common law courts, that is, by ordinary civil action in the state courts, or in federal courts on the civil side, given diversity of citizenship and the required jurisdictional amount or any other jurisdictional ground like in this case, 28 U.S.C. § 1337. *Commonwealth of Puerto Rico v. Sea-Land Service, Inc., et al.,* 349 F.Supp. 964 (DCPR 1973).

While an action in personam may be brought in the state courts pursuant to the saving to suitor's clause or in the federal court on the civil side as aforementioned, if the claim asserted is in the nature of a maritime lien enforceable in admiralty by *in rem* process, only the courts of admiralty, that is, the federal courts sitting in admiralty may take jurisdiction. Thus, in the leading case of *The Moses Taylor,* 4 Wall. 411, 71 U.S. 411, 18 L.Ed. 397 (1867), a California statute, conferring on the state courts power to administer in rem proceedings against the vessel, was struck down as unconstitutional, and in *The Hine v. Trevor,* 4 Wall. 555, 71 U.S. 555, 18 L.Ed. 451 (1867), decided later in the same term of court, it is made explicit that the right to proceed in rem in any other court than the court of admiralty, that is, federal courts, cannot be saved to suitors by the saving clause, for such a proceeding is not a common law remedy at all. Where, on the other hand, a state court merely enforces or secures enforcement of its judgment by levy on or attachment of a vessel as part of the defendant's goods, with a view to compelling appearance or to subjecting the defendant's interest therein to sale to satisfy this judgment, this proceeding lacks the distinctive character of the proceeding in rem, is one known to the common law and is hence saved to suitors under the saving clause. *Rounds v. Cloverport Foundry & Machine Co.,* 237 U.S. 303, 35 S.Ct. 596, 59 L.Ed. 966 (1915); *Commonwealth of Puerto Rico v. Sea-Land Service, Inc.,* 349 F.Supp. 964 (DCPR 1973). See also in its general por-

tions, *Fireman's Insurance Co. of Newark v. Gulf P. R. Lines*, 349 F.Supp. 952 (DCPR 1973) and *Santiago v. Sea-Land Service, Inc.*, 366 F.Supp. 1309 (DCPR 1973).

The exclusion of the state courts from the in rem proceeding is definitely based, in the cases, on the belief that such a proceeding is not a common law remedy. *The Hine v. Trevor, supra.* It may be puzzling, therefore, to find that state courts have not been excluded from exercising jurisdiction in proceedings of an equitable nature dealing with maritime subject matter. *The Knapp Stout & Co. v. McCaffry*, 177 U.S. 638, 20 S.Ct. 824, 44 L.Ed. 921 (1900). Such proceedings are certainly not common law remedies in the strict sense. Probably such cases can be harmonized with the above discussed construction of the saving clause by reference to the fact that the admiralty court itself has been thought not to possess the powers of the courts of equity so that cases of this sort are not within the admiralty jurisdiction at all and, hence, not within the exclusive jurisdiction contemplated in 28 U.S.C. § 1333. Another interpretation would be that the term "common law" may be taken in its widest intendment to include legal, equitable and statutory rights and remedies other than the distinctive admiralty in rem proceedings. In any event, perhaps attempting to codify these cases, the revisors of the Judiciary Code in 1948 and 1949 changed the wording of the saving clause, which now reads as follows: "The district courts shall have original jurisdiction, exclusive of the courts of the states, of: (1) any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled".

Obviously, the change in phraseology of Section 1333 if compared with the old Section 9 of the Judiciary Act of 1789 seems quite unnecessary. Still the case of *The Moses Taylor* and *The Hine v. Trevor* exclude state courts from entertaining in rem proceedings, though empowered by state statute to do so, on the square and sole ground that such proceedings are not common law remedies. In *Madruga v. Superior Court of California*, 346 U.S. 556, 74 S.Ct. 298, 98 L.Ed. 290 (1954) the Supreme Court stated that the new language contained in Section 1333 of Title 28 U.S.C. will be taken to mean the same thing as the old Section 9 of the Judiciary Act of 1789.

On the assumption that the old and the new statute will read the same, we can summarize as follows: Where the suit is in personam, it may be brought either in admiralty, or under the saving clause, in any appropriate non maritime court, by ordinary civil action. Where the suit is in rem, only the admiralty court has jurisdiction.

In all maritime cases whether filed in rem in the federal court as aforementioned, or whether filed in personam in a state court or in a federal court under the diversity statute or pursuant to any other federal jurisdictional ground, the substantive law to apply is the general maritime law and no other.

The Constitution of the United States extends the judicial power to admiralty cases, but is silent as to the substantive law to be applied to such cases. Federal statutes have set forth law that partially covers some important fields such as the Jones Act, 46 U.S.C.A. § 688, relative to maritime personal injuries, but a vast amount of the maritime law applied today has no statutory or obvious constitutional warrant. At the time of the adoption of the Constitution, it probably seemed self-evident that there already was in existence a corpus of maritime law which might, indeed, have been rejected in the courts of any nation strong enough to make that decision stick, but which certainly needed no express or implied legislative action on the part of any one nation to make it valid; clearly that would have been the received view in the days when the maritime law was actually forming. *American Insurance Co. v. Canter*, 26 U.S. (1 Peter) 511, 7 L.Ed. 242 (1828).

Whatever the theory, it is the fact that it was assumed at first, and later expressly stated by all authorities, that those courts to which judicial jurisdiction over maritime cases was granted was thereby empowered and obligated to apply to such cases, in the

absence of statute, the rules of the general maritime law. Certainly the early opinions, especially those of Justice Story as in *De Lovio v. Boit,* 7 Fed.Cases No. 3,776, p. 418 (Dist.Mass.1815) prove that the courts looked on the maritime system which they were administering as international in scope, for they are replete with citations to the Continental European authorities, not for persuasive analogy, but as evidence of the general maritime law. See in this respect, the remarks made by Chief Justice Marshall in the leading case of *American Insurance Co. v. Canter, supra.* As the 19th Century wore on, the basis of substantive maritime law became settled in the United States and the emergent problems came to be more and more those arising out of special national conditions. For both these reasons, overt reliance on foreign authorities diminished; only rare cases now require recourse to European law. See also *Commonwealth of Puerto Rico v. Sea-Land Service, Inc., supra; Fireman's Insurance Co. of Newark v. Gulf P. R. Lines, supra;* and *Santiago v. Sea-Land Service, Inc., supra.*

The general maritime law in the United States, insofar as it remains unmodified by statute, contains, then, two parts. First, and by far the most important, is the corpus of traditional rules and concepts found by our courts in the European authorities, and applied here in the United States with no more variation than is normal when purportedly identical bodies of law are applied in decision by courts in different cultural ambience without common appellate review; second, our rules and concepts improvised to fit the needs of this country, including of course, modifications of the first components.

A second inference, rather forced perhaps, but practically very necessary, from the conferring of the judicial power in admiralty cases, was to the effect that Congress thereby was empowered to alter and supplement the general maritime law by judicial construction and by legislation. See *Panama R.R. Co. v. Johnson,* 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924) which held that the Jones Act, 46 U.S.C.A. § 688,

relating to maritime personal injuries was constitutional. See also the Carriage of Goods by Sea Act, 46 U.S.C. 1300 et seq. Many statutes, some of great importance like the Carriage of Goods by Sea Act, have been passed in the exercise of this power. None, apparently, has ever been declared unconstitutional. Some have added to the judicial jurisdiction; some have changed or filled out substantive rules of maritime law; a few have added whole new chapters of law to their corpus. Of course, nobody will say that Congress may not legislate for maritime matters under any of the powers given it.

From the above it can be seen that in the United States, of which Puerto Rico forms a part, there exists a general maritime law which is uniform throughout the nation and which is binding on all cases of admiralty and maritime jurisdiction whether filed in rem exclusively in federal courts or whether filed in personam in state courts or in federal courts under diversity jurisdiction or under any other ground of jurisdiction as it happens in the present case (that is, pursuant to 28 U.S.C. § 1337). *Commonwealth of Puerto Rico v. Sea-Land Service, Inc., supra; Fireman's Insurance Co. of Newark v. Gulf P. R. Lines, supra;* and *Santiago v. Sea-Land Service, Inc., supra.*

■ From the above discussion of the topic of substantive law in maritime cases, it can be stated that plaintiff's proposition that the Civil Code of Puerto Rico regarding its negligence statute applies to the present case, lacks weight in law. There is no question, from the mere reading of the clause paramount of the bill of lading in this case, that the applicability of the Carriage of Goods by Sea Act was incorporated by reference. Accordingly, plaintiff's claim under 31 LPRA 5141 is hereby dismissed.

We will now briefly discuss the possible applicability of the Admiralty Extension Act, 46 U.S.C.A. § 740 to the case at bar.

The Admiralty Extension Act, 46 U.S. C.A. § 740, has *no application* to the case now before the consideration of the Court. The act passed by Congress in 1948 came

into being to cure an admiralty law substantive anomaly existing at that time, to wit, that damages by a ship to a land structure did not fall under the general maritime jurisdictional statute, 28 U.S.C.A. § 1333, thus the federal courts being deprived of jurisdiction to entertain those cases. The true intent of said act is illustrated by the case of *United States v. Matson Navigation Co.,* 201 F.2d 610 (9th Cir., 1953).

■ By its own terms the act gives admiralty and maritime jurisdiction to the United States Courts in all cases of damage or injury to persons or property by a vessel on navigable water notwithstanding that such damage or injury be done or consummated on land. The purpose and intent of the act has to be seen in relation to facts related to damages occasioned by a vessel to land structures which previously to the enactment of the act and under the old doctrine laid out by the Supreme Court in the cases cited in the *Matson* case, were not subject to the admiralty jurisdiction—that is—a vessel colliding with land-based structures. In view of the foregoing, plaintiff's discussion of the possibility of applying the Admiralty Extension Act is without merit, and its claim thereunder is hereby dismissed.

## II

Plaintiff contends that pursuant to 46 U.S.C. § 1303 the carrier is bound to exercise due diligence to make the ship seaworthy and to properly man the same. He further alleges that pursuant to 46 U.S.C. § 1303(8) any clause, covenant or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage arising from negligence shall be null and void. Finally, plaintiff discusses the exemptions under 46 U.S.C. § 1304 and the burden of proof in cargo claims, citing various cases allegedly supporting its theory of the case.

First of all, we must note that plaintiff's discussion of Sections 1303 and 1304 of the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq. as applicable to the present case seems to bring this action within the purview of the same statute which plaintiff has sought to avoid. Furthermore, no issue as to seaworthiness has been presented to the Court, we all being concerned as of today with the proper measure of damages to apply only. Moreover, no issue was raised in the pretrial as to burden of proof, so we will limit our discussion under plaintiff's second allegation to those cases which allegedly favor plaintiff's cause of action as claimed to be contrary to the rule of market value at the port of destination as the measure of damages, assuming liability on the part of defendant.

The issue of the measure of damages has been squarely decided by this Court in *Santiago v. Sea-Land Service, Inc., supra.* Said decision discusses in extent the various applicable rules concerning the measure of damages in cases involving maritime contracts for transportation and none of the rules there contemplated will favor plaintiff's contention in this case.

■ An examination of the case law cited by plaintiff in support of allegations that it is entitled to other damages, is of no avail to said party. None of the cases cited show that the plaintiff is entitled to a remedy pursuant to Section 1802 of the Civil Code of Puerto Rico, 31 LPRA 5141, that is, Puerto Rico's General Negligence Statute, and consequently, entitled to an award for special damages under said section of our Civil Code.[2] Suffice it to state that damages of a consequential nature are not allowed in a case like the instant one. *Omaf Electric Supplies v. Puerto Rico Marine Management,* Civ.No. 77–25 (DCPR), Opin-

**2.** The plaintiff cites the cases of *Edmond Weil, Inc. v. American West African Line, Inc.,* 147 F.2d 363 (2d Cir., 1945), *The Ciano Navarro v. Doe,* 69 F.Supp. 35 (E.D.Penn.1946), *L. E. Whitlock Truck Service, Inc. v. Regal Drilling,* 333 F.2d 488 (10th Cir., 1964), *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966), *David Crystal, Inc.*

*v. Cunard Steamship Co.,* 223 F.Supp. 273 (S.D. N.Y.1963), *Samincorp. v. SS Rivadeluna,* 277 F.Supp. 943 (D.Del.1967), and *Gardner v. The Calvert,* 253 F.2d 395 (3rd Cir., 1958). An examination of those cases in light of their own facts and in light of *Santiago v. Sea-Land Service, Inc., supra,* show them to be plainly distinguishable from the case at bar.

ion of May 23, 1977; *Santiago v. Sea-Land, supra; McKernin & Co. v. United States Lines, Inc.,* 416 F.Supp. 1068 (2 Cir., 1976) In the alternative, plaintiff admits that the Carriage of Goods by Sea Act is applicable to shipments like the one now under consideration, alleging that liberality in admiralty procedure seeks out intrinsic justice of cause with slight concern for procedural niceties. It further avers that the life of the contract covered the facts in this case and that the consequential damages claimed are indemnifiable herein, since they are the natural and necessary result of the wrongful act or omission of defendant. Plaintiff thus contends that any damage which is traceable to, and the probable and necessary result of the injury, is presumed by or implied in law to have resulted therefrom.

Plaintiff's admission of COGSA's application in the alternative is self-defeating. If it has accepted that the contract existed, plaintiff is barred from requesting the application of a measure of damages different to the ones afforded by the courts under those circumstances, to wit, market value at the port of destination. We thus find no legal logic behind plaintiff's reasoning.

As to admiralty's liberality and the seeking of justice "with slight concern with procedural niceties", it will suffice to say that what is pretended by the plaintiff is far beyond leaving aside procedural stumbling blocks. What the plaintiff pretends this Court to do is to disregard, under the label of procedural niceties, a whole system of law, and adopt one more suitable to the plaintiff. We must observe that plaintiff could have filed an action in local courts or in the Federal Court in St. Croix against the carrier and the supplier of the shore crane, joining the owner of the damaged equipment as plaintiff therein. It would seem that a tort action would be permissible against the Rental Equipment Co. and a maritime action by the crane owner against the carrier. However, this is not such a suit. The cases cited by plaintiff as supporting the contention that any damage which is traceable to and the probable and necessary result of the injury is recoverable have nothing to do with maritime contracts for transportation. It will suffice to say that the case of *Denver v. Roller,* 100 F. 738 (9th Cir., 1900) involves an action ex *delicto* and not ex *contractu* resulting from damages to a passenger on board a train, which of course, carries a different compensation than the one contemplated in a contract of carriage of cargo.

The aforestated should not be construed as a principle departing from the general law of any jurisdiction relating to contracts. As illustration, we may take a hypothetical case arising out of a commercial contract for overland transportation. Pursuant to Puerto Rico's Commercial Code, which is based on the Spanish Commercial Code, of 1886, 10 LPRA 1771, et seq. when we have for our consideration a commercial contract for overland transportation we have to abide in the determination of the rights and responsibilities of the parties under the said contract by the provisions of the Commercial Code. For example, Section 279 of the Commercial Code, 10 LPRA 1783, would read, relating to risks on merchandise transported that the merchandise shall be transported at the risk of the shipper, unless the contrary was expressly stipulated and that, therefore, all damages and impairments suffered by the goods in transportation by reason of accident, act of God or by virtue of the nature or defect of the articles shall be for the account and risk of the shipper, of course, the burden of proof of this accident being on the carrier. If we further examine Section 290 of the Commercial Code relating to overland transportation, 10 LPRA 1794, we will see that a special determination of the amount payable by carriers in case of loss of merchandise is contemplated pursuant to the section, the value of the goods which the carrier must pay in case of their being lost or mislaid shall be fixed in accordance with the declaration of value contained in the bill of lading, no proof being allowed on the part of the shipper that there were among the goods declared therein articles of greater value and money. Of course, these examples taken at random from the dispositions of the Puerto Rico's Commercial Code

governing the commercial contract for overland transportation are definitely not in accordance with Puerto Rico's General Negligence Statute contained in the Civil Code. The General Negligence Statute contained in the Puerto Rico's Civil Code is very ample and comprehensive and its provisions definitely do not match with those contained in the Commercial Code, the reason for this being that the commercial contract for overland transportation is governed by a set of principles contained in the Commercial Code whereas an ordinary tort is governed by the provisions contained in Puerto Rico's General Negligence Statute. One set of provisions excludes the other and we all must agree that no court would rule that Section 1802 of our Civil Code, that is, Puerto Rico's General Negligence Statute, 31 LPRA 5141, would be of application in a case involving a commercial contract for overland transportation which contemplates methods of damage compensation and measures of damage compensation different to those contained in Puerto Rico's General Negligence Statute.

The reason for the aforementioned is that pursuant to Section 1042 of Puerto Rico's Civil Code, 31 LPRA 2992, obligations are created either by law, by contracts, by quasi-contracts and by illicit acts and omissions or by those in which any kind of fault or negligence occurs. In other words, the source of obligations pursuant to the local system of law can be either contractual, as it happens in the case at present, or by an illicit or negligent act by someone. It is only when the obligation is not of a contractual nature, that is, only when an illicit act or omission involving fault or negligence is present, that Section 1802 of our Civil Code, 31 LPRA 5141, is of application. Said in another way, Section 1802 of the Civil Code, that is, Puerto Rico's General Negligence Statute, excludes from its terms and by virtue of Section 1042 aforementioned, contractual negligence and damages.

### III

The plaintiff contends that although Rodolfo Martinez, not a party to this action, was the owner of the crane in question, nevertheless Stainless Steel and Metal Manufacturing Corporation, as shipper and a party to the bill of lading, is entitled to recover the consequential damages complained of in its amended complaint of August 2, 1969. The case law does not support such a contention.

A fast reading of *Salzman Tobacco Co. v. The SS Mormacwind,* 371 F.2d 537 (2d Cir., 1967), might lead the plaintiff to believe that there is a long-established rule that an owner or consignee may recover for damage to cargo as long as the carrier is protected against double recovery. In such a case the carrier has no concern with any equities between the owner or consignee and others. Such a rule of law is a valid proposition if seen in light of its actual meaning. It will suffice to advance that in the amended complaint of August 2, 1969 the plaintiff calls for damages for every conceivable item including loss of business reputation, but at no time requests damage to the crane itself.

The true meaning of the well-established rule that an owner or consignee may recover for damage to the cargo as long as the carrier is protected from double recovery is best explained by *The Nichiyo Maru,* 89 F.2d 539 (4th Cir., 1937). In said case the Court of Appeals for the Fourth Circuit conceded the right of one William E. Wellman to maintain the suits and of the Standard Wholesale Phosphate & Acid Works, Inc. to intervene. It appeared that Wellman, the plaintiff, was a broker, that he purchased the fish meal involved and imported it; that the shipments were made for his account and risk upon the letter of credit which he had procured; that he paid the drafts which were drawn against the shipments and was paid in turn by Standard, having purchased the meal for sale to that corporation; that delivery was made to the corporation; that the complaints were filed by Wellman on behalf of all persons interested in the shipments and that at the trial the complaints were amended to bring in the corporation as a party.

Under those circumstances, the rule of law which we are now discussing permitted that the complaints be allowed. Wellman was not only the purchaser of the fish meal and the person to whom it was shipped, but he also was the assignee of the bills of lading attached to the drafts drawn against the shipments. Under those conditions the right of the consignee of the shipment to sue for damages, either in his own name or in the name of his principal, was a solid rule of law to follow. Equally, it was held that the endorsee of the bill of lading could sue for loss of or damage to the goods although he may be but an agent or trustee for others. The Standard, because it had guaranteed Wellman's compliance with his contract that he might obtain the letter of credit, was under the necessity of paying him for the shipments so that he might meet the drafts which had been drawn against them; but while this undoubtedly gave Standard an equitable interest in any recovery which he might obtain for damages sustained by the shipments, it did not destroy his right as assignee of the bills of lading to file suits for damages to the shipments for the benefit of himself and other persons interested therein. The equities between the holder of the bills of lading and such persons were not matters which a carrier guilty of negligence could urge in his defense because of the intimate relationship of the party plaintiffs themselves. Of course, the carrier could not be held to double exposure under any circumstances.

As it can be plainly seen, the facts in the case at bar are completely different to those in *Salzman Tobacco Co. v. The SS Mormacwind* and *The Nichiyo Maru, supra.* Here we have a claim for consequential damages by the lessee of a crane that was being transported to the Virgin Islands to be used on work there contracted with third persons. The damages claimed are all of a consequential nature and are not directed at any point to recovery for the damages that the crane actually sustained. There is no owner and/or consignee relationship in this case and, of course, there is not even the question of double exposure on the part of the carrier. The facts are simple and we so find.

In view of the foregoing, the instant complaint is hereby dismissed without any specific imposition of costs or attorney's fees.

Judgment shall be entered accordingly.